**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MAURICE TODD,** | : | **CIVIL NO. 1:CV-13-0579** |
| **Plaintiff,** | : | |
| | : | **(Judge Kane)** |
| **v.** | : | |
| | : | |
| **RONNIE R. HOLT, <u>et</u> <u>al</u>.,** | : | |
| **Defendants** | : | |

**<u>MEMORANDUM</u>**

Maurice Todd ("Todd"), an inmate confined at the United States Penitentiary at Canaan,

("USP-Canaan"), Waymart, Pennsylvania, filed this <u>Bivens</u>[1] action, 28 U.S.C. § 1331, raising

claims under the First and Eighth Amendments, as well as the Religious Freedom Restoration

Act ("RFRA"), 42 U.S.C. § 2000bb <u>et</u> <u>seq</u>. He alleges the denial of religious certified meals for

fourteen (14) days while USP-Canaan was in lockdown status. Named as defendants are USP-

Canaan Warden Ronnie Holt and Assistant Food Service Administrator ("AFSA") DaShawn

China. Pending are Todd's motion for the appointment of counsel (Doc. No. 30) and

Defendants' motion to dismiss and/or, in the alternative, for summary judgment (Doc. No. 17).

For the reasons that follow, the motion for counsel will be denied, and the motion to dismiss

and/or for summary judgment will be granted in part and denied in part.

**I.      Allegations in the complaint**

Todd claims that pursuant to a written contract, he has been participating in the Bureau of

Prison's ("BOP") Religious Certified Meal program for over one (1) year. On June 25, 2011,

---

[1] <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388
(1971). <u>Bivens</u> stands for the proposition that "a citizen suffering a compensable injury to a
constitutionally protected interest could invoke the general federal-question jurisdiction of the
district courts to obtain an award of monetary damages against the responsible federal official."
<u>Butz v. Economou</u>, 438 U.S. 478, 504 (1978).

inmates at USP-Canaan became ill due to contaminated food served in the dining hall. Because Todd ate his pre-packaged religious certified meal, he did not become ill. (Doc. No. 1, Compl. at 3.) On June 26, 2011, Defendant Holt ordered that the prison be placed on lockdown. For the evening meal Todd was served a spaghetti and meatball dinner. Other inmates in his housing unit received satellite hot meals. The following morning, all certified meals were discontinued without any notification. Todd claims he received improperly packaged cereals and other food items which did not bear the religious certified program's acceptable kosher symbols. (Id.) On the afternoon of June 27, 2011, Food Service Defendants began serving Todd and his housing unit satellite hot meals in styrofoam trays containing foods that were not Kosher/Halal. (Id. at 3-4.) Todd complained to correctional officers assigned to his housing unit about not receiving his certified meals, and refused to eat the satellite hot meals due to religious objections. (Id. at 4.)

On June 29, 2011, Defendant Holt discontinued the religious diet meal program without providing any notification. (Id.) He did so without first determining if the inmates participating in the program were ill. Todd claims that from June 29, 2011 through July 12, 2011, Defendants withheld 36 or more certified meals from him. Repeated requests made by correctional officers to the Food Service Department seeking certified religious meals for Todd were refused. (Id.) On July 1, 2011, AFSA China failed to reinstate Todd to the religious diet program or provide him with notice that the program had been suspended. (Id.) During the fourteen (14) days that USP-Canaan was on lockdown, Todd states he ate little to nothing because the food was unacceptable. He claims he ". . . suffers greatly from all of the consequences therefrom." (Doc. No. 1 at 3.) As relief, he seeks an injunction compelling Defendants to serve certified meals during controlled lockdowns, nominal damages, and unspecified compensatory and punitive

damages.[2]  (Id. at 6.)

## II.   Motion for appointment of counsel

Todd seeks the appointment of counsel in this action.  In support thereof, he states that

(1) he is unable to afford a lawyer; (2) the issues involved in this case are complex; (3) he has

limited access to the law library; and (4) he has a limited knowledge of the law.  (Doc. No. 30.)

Although prisoners have no constitutional or statutory rights to appointment of counsel in

a civil case, Barham v. Johnson, 126 F.3d 454, 456-57 (3d Cir. 1997), district courts have broad

discretionary power to appoint counsel under 28 U.S.C. § 1915(e)(1).  Montgomery v. Pinchak,

294 F.3d 492, 499 (3d Cir. 2002)(citing Tabron v. Grace, 6 F.3d 147, 153 (3d Cir. 1993)); Ray v.

Robinson, 640 F.2d 474, 477 (3d Cir. 1981).  The United States Court of Appeals for the Third

Circuit has stated that the appointment of counsel for an indigent litigant should be made when

circumstances "indicate the likelihood of substantial prejudice to him resulting, for example,

from his probable inability without such assistance to present the facts and legal issues to the

court in a complex but arguably meritorious case."  Smith-Bey v. Petsock, 741 F.2d 22, 26 (3d

Cir. 1984).

The initial determination to be made by the court in evaluating the expenditure of the

"precious commodity" of volunteer counsel is whether the plaintiff's case "has some arguable

---

[2]  Defendants claim that any request for compensatory damages is subject to dismissal in that Todd has failed to allege any physical injury as required under 42 U.S.C. § 1997e of the Prison Litigation Reform Act of 1995 ("PLRA"), Pub. L. No. 104-134, Section 803, 110 Stat. 1321 (April 26, 1996).  (Doc. No. 21 at 3, n. 1.)  While Defendants' argument is well-taken, it is possible that Todd's request for relief can be interpreted to assert physical injury.  Because Todd may be able to cure this deficiency by amendment, he will be provided an opportunity to submit an amendment to his complaint for the sole purpose of setting forth any physical injury he may have suffered.

merit in fact and law." <u>Montgomery</u>, 294 F.3d at 499.  For purposes of this motion, the Court

will assume Todd's case has arguable merit in law and the facts.

Next, upon successfully clearing the above hurdle, other factors to be examined are:

1. The plaintiff's ability to present his or her own case;

2. The difficulty of the particular legal issues;

3. The degree to which factual investigation will be necessary and the ability of the
plaintiff to pursue investigation;

4. The plaintiff's capacity to retain counsel on his or her own behalf;

5. The extent to which a case is likely to turn on credibility determinations; and

6. Whether the case will require testimony from expert witnesses.

<u>Montgomery</u>, 294 F.3d at 499 (citing <u>Tabron</u>, 6 F.3d at 155-57).

The pending motion fails to set forth any special circumstances or factors that would

warrant the appointment of counsel at this time.  <u>Tabron</u>, 6 F.3d at 155-56.  The pleadings

submitted thus far do not contain overly complicated legal issues.  In reviewing Todd's filings it

is apparent that he is literate and able to litigate this action on his own.  He has clearly

demonstrated the ability to prepare and file documents with the Court as evidenced by his

pending motion for counsel and documents filed in opposition to Defendants' pending motion to

dismiss and/or, in the alternative, for summary judgment.  (Doc. Nos. 31, 32.)

Although Todd claims he has limited access to the law library, he does not claim he is

denied time in the law library.  His filings reveal citation to relevant legal authority which

indicates he does have access to legal books and materials.  For these reasons, it cannot be said,

at least at this point, that Todd will suffer substantial prejudice if he is required to proceed with

the prosecution of this matter on his own.  This Court's liberal construction of <u>pro</u> <u>se</u> pleadings,

Haines v. Kerner, 404 U.S. 519 (1972), coupled with the apparent ability of Todd to litigate this action, weigh against the appointment of counsel.  His pending motion will be denied without prejudice.  If future proceedings demonstrate the need for counsel, the matter may be reconsidered either *sua sponte* or upon a properly filed motion.

### III.    Motion to Dismiss

#### A.    Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of complaints that fail to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  Under Rule 12(b)(6), we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)(quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)).  While a complaint need only contain "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), and detailed factual allegations are not required, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  Id. at 570.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Ashcroft v. Iqbal, 556 U.S. at 556.  "[L]abels and conclusions" are not enough, and a court "'is not bound to accept as true a legal conclusion couched as a factual allegation.'"  Twombly, 550 U.S. at 555 (quoted case omitted).

In resolving a motion to dismiss, we thus "conduct a two-part analysis."  Fowler, supra, 578 F.3d at 210.  First, we separate the factual elements from the legal elements and disregard

the legal conclusions. Id. at 210-11. Second, we "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" Id. at 211 (quoted case omitted).

This Court is mindful, however, that the sufficiency of this pro se pleading must be construed liberally in favor of the plaintiff, even after Iqbal. See Erickson v. Pardus, 551 U.S. 89 (2007). However inartfully drafted, pro se pleadings are held to less stringent standards than pleadings drafted by attorneys. See Haines v. Kerner, 404 U.S. 519, 520 (1972). Moreover, a court should not dismiss a complaint with prejudice for failure to state a claim without granting leave to amend, unless it finds bad faith, undue delay, prejudice or futility. See Grayson v. Mayview State Hosp., 293 F.3d 103, 110-11 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 117 (3d Cir. 2000).

### B. Lack of Personal Involvement

To establish liability under Bivens, the personal involvement of each defendant in the alleged depravation must be demonstrated. Personal involvement or some affirmative action on the part of a defendant is necessary before he or she may be found liable for a civil rights violation. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988.) Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which a plaintiff's claims are based. Rode, 845 F.2d at 1207. Liability cannot imposed based on a theory of respondeat superior. See, e.g., Rizzo v. Goode, 423 U.S. 362 (1976); Sutton v. Rasheed, 323 F.3d 236, 249-50 (3d Cir. 2003).

Personal involvement can be shown by alleging either personal direction or actual knowledge and acquiescence in a subordinate's actions. Rode, 845, F.2d at 1207. "Allegations

6

of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." Id.; see also Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005).  Moreover, to maintain a claim for supervisory liability, a plaintiff must show: (1) that the supervising official personally participated in the activity; (2) that the supervising official directed others to violate a person's rights; or (3) that the supervising official had knowledge of and acquiesced in a subordinate's violations.  See Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).

Defendants move to dismiss both of the named Defendants on the basis of lack of personal involvement.  The Court agrees that the claims set forth against Warden Holt are based purely on his supervisory role in the prison.  Todd seeks to impose liability upon him because as Warden, he placed USP-Canaan on lockdown and suspended all food service operations, including the Religious Diet Program, while determining and addressing the source of the problems being experienced by the inmates.  There are no allegations that Holt had personal knowledge of, or reason to know, that Todd's constitutional rights were being violated or that the food served during the lockdown period violated his religious dietary practices.  The complaint contains no allegations that he had any involvement in feeding or directing staff to fed inmates food that violated their religious beliefs.  For these reasons, Holt will be dismissed from this action.

The Court does find that Todd has alleged sufficient personal involvement with respect to Defendant China.  He alleges that between June 29, 2011 and July 12, 2011, in response to his complaints about the failure to receive thirty-six (36) or more religious diet meals, the correctional officers on his unit sent requests and made calls to the Food Service Department to send the religious meals to Todd.  (Doc. No. 1, Compl. at 4.)  On July 1, 2012, China refused to

reinstate Todd's religious diet program.  Because these allegations set forth the necessary

personal involvement, the motion to dismiss Defendant China will be denied.

    **C.**       **RFRA claim**

       Defendants move to dismiss Todd's claim brought under the Religious Freedom

Reformation Act (RFRA) on the basis of failure to state a claim upon which relief can be

granted.  The RFRA "prohibits the Federal Government from substantially burdening a person's

exercise of religion, unless the Government 'demonstrates that application of the burden to the

person represents the least restrictive means of advancing a compelling interest.'"  Gonzales v. O

Centro Espirita Beneficente Uniao do Vegetal, 546 U.S. 418, 423 (2006)(quoting 42 U.S.C.

§ 2000bb-1(b)).

       In seeking the dismissal of the RFRA claim, Defendants contend that Todd fails to allege

a substantial burden on the exercise of his religion.  "[A] substantial burden exists where: 1) a

follower is forced to choose between following the precepts of his religion and forfeiting benefits

otherwise generally available to other inmates versus abandoning one of the precepts of his

religion in order to receive a benefit; or 2) the government puts substantial pressure on an

adherent to substantially modify his behavior and to violate his beliefs."  Washington v. Klem,

497 F.3d 272, 280 (3d Cir. 2007)(addressing the Religious Land Use and Institutionalized Person

Act of 2000 which also requires a substantial burden).

       Defendants contend that Todd fails to allege that the special bland diet he was provided

during the lockdown period caused him to abandon his religious beliefs or convictions.  Instead,

they maintain he merely asserts an inconvenience due to the interruption of his religious certified

meals.  However, reading the complaint in the light most favorable to this pro se plaintiff, the

8

Court construes Todd to allege that he was not served food that complied with his religious beliefs.  He specifically alleges that he refused to eat the satellite meals due to his religious obligations in that they were not Kosher/Halal.  (Doc. No. 1 at 3.)  In opposing Defendants' motion to dismiss, he states that because the food was not Kosher/Halal, it was tainted and he was therefore prohibited by his religion from consuming it. (Doc. No. 32 at 4.)  As a result, Todd claims he ate little or nothing during the period of the lockdown.

Requiring a prisoner to eat food forbidden by his religion's dietary regimen may "substantially burden" one's religious practice and case law generally indicates that prison administrators must provide an adequate diet without violating an inmate's religious dietary restrictions in order not to unconstitutionally burden free exercise rights.  See Williams v. Morton, 343 F.3d 212, 219 (3d Cir. 2003); DeHart v.  Horn, 227 F.3d 47, 55-56 (3d Cir. 2000). At this juncture, the Court finds that Todd alleges a substantial burden for purposes of the RFRA.      In moving to dismiss the RFRA claim, Defendants argue that even if the Court finds the existence of a substantial burden to Todd's religious beliefs, the bland diet was the least restrictive means in furthering the compelling government interest, namely, investigating and curing the cause of the salmonella outbreak at USP-Canaan.  Without passing judgment as to the ultimate success of any RFRA claim, these issues are not properly resolved on a motion to dismiss, and Defendants have not moved for summary judgment with respect to the RFRA claim. As such, this argument will not be addressed herein.

## IV.     Motion for Summary Judgment

### A.      Standard

Under Rule 56 of the Federal Rules of Civil Procedure, the movant is entitled to

summary judgment if it "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In pertinent part, parties moving for, or opposing, summary judgment must support their position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Colwell v. Rite-Aid Corp., 602 F.3d 495, 501 (3d Cir. 2010)(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).

### B.    Statement of Material Facts[3]

DaShawn China is the Assistant Food Service Administrator ("AFSA") at USP-Canaan. In this position, China supervises the Food Service staff and assists the Food Service Administrator in developing, managing and providing a diversified, nutritionally adequate food service program for the inmate population.  (Doc. No. 22-1, Ex. 1, China Decl. ¶ 1.)  On June 26, 2011, after the 4:00 p.m. count, USP-Canaan was placed on lockdown following numerous inmate complaints of stomach cramps, vomiting, diarrhea, fever and headaches.  (Id. ¶ 2.)  The inmates were advised to keep hydrated while Health Service staff attempted to determine the cause of the complaints.  During the lockdown, all meals were served to the inmates in their

---

[3] Most of the following facts are taken from the Defendants' Statement of Material Facts, as supported by submitted evidentiary materials.  (Doc. No. 22.)  Todd has not filed a separate response to Defendants' Statement of Material Facts as required by M.D. Pa. Local Rule 56.1. However, in his declaration he sets forth his own statement of disputed factual issues.  (Doc. No. 31 at 2-4.)  Todd does not submit any opposing evidentiary materials, but does rely on documents submitted by Defendants.  To the extent Todd's facts are supported by evidentiary materials in the record, they will be set forth herein.

housing units.  (Id.)

On or about June 27, 2011, the Food Service Department was inspected.  (Id. ¶ 3.)  The following day, the Safety Department cleaned and continued to inspect the Food Service Department.  (Id. ¶ 4.)  All food service operations at the prison were suspended and moved to the adjacent Federal Prison Camp.  (Id.)

On June 28, 2011, China learned that the presence of salmonella was the cause of sickness among the inmate population.  (Id. ¶ 5.)  Health Services initiated a special or bland diet for all inmates beginning with the lunch meal on this date.  (Id. ¶ 5; Attach. A at 1-3, Electronic Mail.)  Lunch and dinner consisted of chicken broth rice soup, apple sauce, two slices of bread, three ramen noodle soup packs, hot water, and powdered Gatorade.  (Id.)

In accordance with the BOP's Certified Food Component Procedures, inmates participating in the certified food component were also placed on this medical diet.  (Id. ¶ 6; Attach. B, Certified Food Component Procedures.)  This is so even though the religious diet participants were not sickened by the salmonella.  (Doc. No. 31, Todd Decl. ¶8.)  Todd was not provided with reasons or given  notification that the religious diet program was suspended. (Id. ¶ 2.)  Cleaning in the Food Service Department continued on June 29, 2011, and prison staff were advised the department would be closed until further notice.  (Id. ¶ 7.)  Food preparation continued at the Federal Prison Camp.  The breakfast meal consisted of hot water, two packets of oatmeal, apple sauce, two slices of bread, and powdered Gatorade.  (Id. ¶ 7; Attach. A at 1.)  Lunch and dinner were the same menu as the prior day.  The same basic menu continued for the meals provided by the adjacent Federal Prison Camp through lunch on July 1, 2011, while cleaning continued at USP-Canaan.  (Id. ¶¶ 8-9.)

By lunch on July 1, 2011, Health Services approved an enhanced menu.  (Id. ¶ 9; Attach. A at 2-4.)  An inmate could choose to continue receiving the bland medical diet or a modified regular meal.  Items such as peanut butter and jelly, a beef hamburger, bologna, chicken, turkey sausage, tuna pouches with a mayonnaise packet, beef fritters, meatballs, cheese crackers, bagels and milk were introduced to the daily menu over the course of the next week.  (Id. ¶¶9 -15; Attach. A at 2.)  Cleaning continued in the Food Services Department during this entire time period.  Todd states he received a religious diet meal on July 3, 2011, but also claims he was denied religious certified meals from July 1, 2011 through July 12, 2011.  (Doc. No. 31, Todd Decl. ¶¶ 12, 18.)  On July 7, 2011, USP-Canaan began to be used for food preparation, and on July 9, 2011, the normal menu was restarted.  During this time, cleaning of the Food Services Department continued.  (Id. ¶ 17.)  On July 10, 2011, USP-Canaan returned to the normal menu, and cleaning continued for the next several days.  (Id. ¶¶ 18-20.)  On July 13, 2011, USP-Canaan returned to normal operations following service of the breakfast meal in the housing units.  (Id. ¶21.)

During the time of the institution lockdown and activation of the bland diet at USP-Canaan, the operation of the Food Service Department was governed by BOP Program Statement 4700.05, Food Service Manual.  (Id. ¶22; Attach. C.)  Program Statement 4700.05 was issued, in part, to provide inmates with "nutritionally adequate meals, prepared and served in a manner that meets established Government health and safety codes."  (Id. ¶22; Attach. C at 2.)  A registered dietitian conducts an annual nutritional analysis on all items served to the inmates to ensure meals meet the Daily Reference Intake for nutrients published by the Food and Nutrition Board of the National Academy of Sciences.  (Id. ¶23; Attach. C, Ch. 2 at 3.)

Program Statement 4700.05 authorizes the BOP to prepare and/or serve religious and medical diets.  (Id. ¶24; Attach. C, Chs. 4, 5.)  Participants in the certified food program are not authorized to consume mainline or hot bar food items.  However, under the policy, an inmate's participation in the Religious Diet Program is not affected by the inmate's temporary placement on a medically prescribed  diet.  (Id., Attach. C, Ch. 4 at 3.)  The policy permits the Religious Diet Program to be modified with an alternate menu in emergency situations, including institution lockdowns.  (Id. ¶24; Attach. C, Ch. 6 at 1-2.)

> ### C.     First Amendment

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; ..." U.S. Const. Amend I.  It is undisputed that prisoners do not entirely forfeit all constitutional guarantees by reason of their conviction and confinement.  Bell v. Wolfish, d441 U.S. 520, 545 (1979).  Prisoners, as is well recognized, must be afforded "reasonable opportunities" to exercise their religious freedom guaranteed by the First Amendment.  Cruz v. Beto, 405 U.S. 319, 322 n. 2 (1972).

Inmates have a constitutional right to receive a nutritious diet consistent with their religious beliefs.  Johnson v. Horn, 150 F.3d 276, 283 (3d Cir. 1998)(holding that the First Amendment requires prison officials to provide inmates "with a diet sufficient to sustain them in good health without violating [religious] law")(citations omitted).  However, the right to practice one's religion while in prison is not absolute.  Imprisonment necessarily results in restrictions on some constitutional rights, including the First Amendment's right to the free exercise of religion. Thornburgh v. Abbott, 490 U.S. 401, 407 (1989); O'Lone v. Shabazz, 482 U.S. 342, 348-49 (1987).  Further, it is equally settled that "prison administrators ... should be accorded wide-

ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." <u>Bell</u>, 441 U.S. at 547-48.

The limitations on the First Amendment rights of inmates are outlined in <u>Turner v. Safley</u>, 482 U.S. 78 (1987).  As summarized by the Third Circuit in <u>Johnson v. Horn</u>, 150 F.3d 276, 282 (3d Cir. 1998), the factors that impact on the limitations are: (1) whether there is a rational connection between the regulation and the penological interest asserted; (2) whether inmates have alternative means of exercising their rights; (3) what impact accommodation of the right will have on guards, other inmates and the allocation of prison resources generally and (4) whether alternative methods for accommodation exist at de minimis cost to the penological interest asserted.

In applying the <u>Turner</u> factors, Defendants seek summary judgment with respect to Todd's First Amendment claim.  The first <u>Turner</u> factor considers the relationship between the regulation and the penological interest.  Based upon the undisputed facts contained in the record, there clearly exists a rational connection between the interruption of the regular food service/provision of a bland diet at USP-Canaan and the legitimate government interest in determining/addressing the source of the illness throughout the prison population.  It cannot be argued that the medical concern for the well-being of the inmates is not a legitimate penological interest.  Moreover, providing a special bland diet across the board to all inmates while prison staff focused on containing the salmonella outbreak and restoring normal operations in encompassed within the legitimate penological interest even though not all inmates ate the contaminated food.

The second <u>Turner</u> factor considers whether alternative means of exercising the right exist.  As the right to free exercise must be construed "sensibly and expansively," <u>Thornburgh v. Abbott</u>, 490 U.S. 401, 417 (1989), it must be determined whether Todd retains alternative means for exercising his religious right.  While Defendants argue that Todd had the opportunity to consume items from the special bland diet which were religiously acceptable, <u>i.e.</u>, "no-flesh" dishes, an issue of fact exists in that even assuming such dishes were made available to Todd during the lockdown period (which he disputes), he claims he was prohibited from eating them because they were tainted due to the way in which they were prepared and/or served.

The final two <u>Turner</u> factors "focus on the specific religious practice or expression at issue and the consequences of accommodating the inmate for guards, for other inmates, and for the allocation of prison resources."  <u>DeHart</u>, 227 F.3d at 57.   Defendants do not submit evidentiary materials that directly address these points.  For these reasons, and without passing judgment with respect to the ultimate success of Todd's First Amendment claim, summary judgment will be denied at this procedural point in the case.

**D.     Eighth Amendment**

The Eighth Amendment imposes duties upon prison officials, "who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1984)(quoting <u>Hudson v. Palmer</u>, 468 U.S. 517, 526-27 (1984)).  However, "the Constitution does not mandate comfortable prisons." <u>Rhodes v. Chapman</u>, 452 U.S. 337, 349 (1981).

To present a sufficient Eighth Amendment claim related to the conditions of

confinement, an inmate must allege: (1) that the deprivation is sufficiently serious; and (2) that the defendant was deliberately indifferent to this deprivation.  See Young v. Quinlan, 960 F.2d 351, 359-60 (3d Cir. 1992)(citing Wilson v. Seiter, 501 U.S. 294, 298-303 (1991). The Supreme Court has explained that the first prong is objective, while the second prong is subjective. Wilson, 501 U.S. at 298.  Moreover, the inmate must satisfy both prongs of the test; therefore, a prison official's conduct will not constitute deliberate indifference without evidence of the requisite mental state.  See Farmer, 511 U.S. at 837-38.

Only extreme deprivations will satisfy the objective first component of an Eighth Amendment claim.  See Helling v. McKinney, 509 U.S. 25 26 (1993); Hudson v. McMillian, 503 U.S. 1, 8-9 (1992).  When examining conditions of confinement cases, courts will examine the "totality of the circumstances," not just the allegedly egregious conditions individually, to determine the extent of the deprivation.  Id.

As for the second component of an Eighth Amendment claim, the prison official must have acted with deliberate indifference or reckless disregard toward the inmate's health or safety. See Hudson, 503 U.S. at 8.  To be deliberately indifferent, a prison official must know of, and disregard, an excessive risk to the inmate's health or safety.  See Farmer, 511 U.S. at 834-38. In considering the undisputed facts in the record, no reasonable jury could find that Defendant China acted with deliberate indifference in failing to provide Todd with his religious certified meals for less than a two week period.  The entire institution was placed on lockdown on June 26, 2011 in response to an emergency situation that was later determined to be salmonella poisoning on June 28, 2011.  Because of such, all food service operations at the prison were suspended and moved to the adjacent Federal Prison Camp while cleaning ensued.  A special or

bland diet was initiated by Health Services for the entire inmate population beginning with lunch

on June 28, 2011.  In accordance with the BOP's Certified Food Component Procedures, inmates

participating in the certified food component were placed on this diet.  On July 13, 2011, the

institution returned to normal operations, and inmate who were in the religious diet program

prior to the lockdown were automatically returned to the religious diet program.

During the lockdown and activation of the bland diet at USP-Canaan, the operation of the

Food Service Department was governed by BOP Program Statement 4700.05, Food Service

Manual, which assures that nutritional foods are provided to the inmate population.  The

Program Statement also authorizes the BOP to prepare and/or serve religious and medical diets.

Pursuant to the Program Statement, an inmate's participation in the Religious Diet Program is

also not affected by the inmate's temporary placement on a medical diet, and allows the

Religious Diet Program to be modified with an alternate menu in emergency situations,

including a lockdown.     In support of the fact that adequate nutritional food was provided to

inmates during the lockdown, Defendants submit a copy of the daily menu for each day during

the lockdown period.        The Eighth Amendment only requires that inmates be provided

nutritionally adequate food.  See Lalufgas v. Speziale, 263 F. App'x 192, 198 (3d Cir. 2008).

Todd offers nothing to contradict that the special bland diet provided in accordance with PS

4700.05 was nutritionally inadequate or that Defendant China withheld his certified religious

diet with the deliberate intent to cause him harm.  While Todd may have chosen not to consume

the food provided to him, the record reveals that nutritional food was offered to him in

accordance with PS 4700.05, as implemented due to the emergency situation experienced at

USP-Canaan.  Moreover, Todd does not dispute that when USP-Canaan returned to normal

17

operations his certified religious meals were resumed.  For these reasons, summary judgment

will be granted with respect to the Eighth Amendment claim.

**V.      Qualified immunity**

Defendant argues that he is entitled to qualified immunity because he did not violate

Todd's clearly established constitutional rights by serving him bland diet meals.[4]  (Doc. No. 21

at 26.)  Qualified immunity protects "government officials performing discretionary functions"

by "shield[ing them] from liability for civil damages insofar as their conduct does not violate

clearly established statutory or constitutional rights of which a reasonable person would have

known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Qualified immunity shields the

government officials from facing lawsuits.  Saucier v. Katz, 533 U.S. 194, 200 (2001).  To

determine whether an official is entitled to qualified immunity, the Court must decide, in either

order, whether, "taken in the light most favorable to the party asserting the injury . . . the facts

alleged show the officer's conduct violated a constitutional right," and "whether the right was

clearly established" at the time of the official's conduct, in that a reasonable officer would have

known his conduct was unlawful.  Id. at 201; Egolf v. Witmer, 526 F.3d 104, 110 (3d Cir. 2008)

(citations omitted).

Viewing the evidence in favor of Todd as the non-movant, the Court found that

Defendant was not entitled to summary judgment on Todd's First Amendment claim.  See

Section IV.C.  Thus, at this stage in the proceeding, Todd has adequately stated a claim under the

First Amendment.  The Court will therefore assess whether Defendant China's conduct violated

---

[4] Because the Court will dismiss Defendant Holt from this action, the Court's qualified
immunity discussion will apply only to Defendant China.

clearly established law such that every "reasonable official would have understood that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635 (1987). The Court need not rely on a precedential case that is factually identical, but "existing precedent must have placed the statutory or constitutional question beyond debate." Ashcroft v. al-Kidd, 131 S.Ct. 2074, 2083 (2011) (citations omitted).

Considering the facts in the light most favorable to Todd, the Court finds that Defendant China has not shown that his conduct did not violate any clearly established right. China merely states that "the record above demonstrates that no reasonable prison official would have believed that providing a nutritionally adequate meal that also satisfied Todd's religious requirements as set forth under prison policy during an emergency lock-down was a violation of any constitutional right."  (Doc. No. 21 at 28.) Defendant's statement assumes without establishing the constitutionality of serving Todd bland diet meals during USP-Canaan's lockdown. Such conclusory statements are insufficient to meet the pleading burden for qualified immunity. See Thomas v. Independence Twp., 463 F.3d 285, 293-94 (3d Cir. 2006) ("[T]he burden of pleading qualified immunity rests with the defendant, not the plaintiff . . . . [P]laintiff has no obligation to plead a violation of clearly established law in order to avoid dismissal on qualified immunity grounds."). Id. at 293. Accordingly, at this stage in the proceedings the Court will deny Defendant's motion to dismiss on the basis of qualified immunity.

## VI.    Conclusion

Based on the foregoing, Todd's motion for the appointment of counsel will be denied and Defendants' motion to dismiss and/or, in the alternative, for summary judgment will be granted in part and denied in part.  An appropriate order follows.